# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

LAWRENCE D. BROGAN,

        Plaintiffs,        Case No. 2:08-cv-765
                                         JUDGE GREGORY L. FROST
    v.                                MAGISTRATE JUDGE KING

THE HARTFORD LIFE INSURANCE
COMPANY,

        Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's motion for summary judgment based upon Plaintiff's failure to exhaust his administrative remedies (Doc. # 16), Plaintiff's memorandum in opposition to Defendant's motion (Doc. # 20), and Defendant's reply memorandum in support of its motion (Doc. # 22). For the reasons that follow, the Court **DENIES** Defendant's motion for summary judgment.

## I. Background

These facts are taken from the administrative record that was filed with this Court on February 10, 2009. (Doc. # 11.) On March 22, 2004, Plaintiff Lawrence D. Brogan began his work as a financial advisor for American International Group Inc. ("AIG"). Plaintiff was diagnosed with bilateral tinnitus secondary to intravenous antibiotics on October 28, 2004. Plaintiff's last day of work at AIG was July 22, 2005. Thereafter, Plaintiff was placed on short term disability leave effective July 25, 2005. On November 10, 2005, David Avery, M.D., certified that Plaintiff could no longer work due to his tinnitus.

On January 5, 2006, Plaintiff applied for long term disability benefits. Dr. Avery noted on the "Attending Physician's Statement" that Plaintiff was experiencing dizziness, weakness,

1

and a lack of focus.  Defendant obtained medical records from Paul Melaragno, M.D., who performed knee replacement surgery on Plaintiff in August 2005.  Dr. Melaragno's records indicated that during a follow-up appointment in December 2005, Plaintiff stated he "was doing great" and could participate in activities such as hockey and racquetball.  Defendant then sought additional information from Dr. Avery.  On March 6, 2006, Dr. Avery reiterated his opinion that Plaintiff was unable to work.  On April 4, 2006, Defendant denied Plaintiff's request for long term disability ("Denial Letter").

The Denial Letter was signed by Nancy L. D Agostino, Senior Examiner Benefit Management Services, and advised Plaintiff of his right to appeal pursuant to his insurance plan with AIG ("the Plan") and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1133.  The letter states:

> You may appeal our decision even if you do not have new information to send us. You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim.  If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eighty (180) days from your receipt of this letter.  Your appeal letter should be signed, dated, and clearly state your position.  Along with your appeal letter, you may submit written comments, documents, records and other information related to your claim.

(Doc. # 11 at 265.)  The letter further directed Plaintiff that should he wish to appeal, the appeal letter should be sent to the Claim Appeal Unit, Benefit Management Services at the Hartford Life Insurance Company.  (*Id.*)

On July 14, 2006, Plaintiff's attorney, William Walker, wrote a letter to Senior Examiner D Agostino at Benefit Management Services, stating:  "I would ask that you reconsider your claim denial and award the benefits to Mr. Brogan which we feel he is entitled to by virtue of the clearly stated language of the Hartford Contract.  Please submit your redetermination letter to me

along with a copy to my client." (*Id.* at 248.) Enclosed in this letter was a report by clinical psychologist Nancy Canterbury, dated May 9, 2006:

> You stated in your letter that Mr. Brogan was able to perform full physical activities, but that is not the issue on which he is basing his claim. The claim is solely based on the condition of tinnitus which was caused by medications administered to him in July of 2004. Mr. Brogan's work as a Financial Advisor could hardly be described as light level work as you outlined. The work of a stock broker/financial advisor is generally recognized as one of the three top stressful jobs in the workforce. Because of this condition he is unable to obtain a release from his doctor.

(*Id.* at 247.) Senior Examiner D Agostino confirmed receipt of the request for review in a letter to Attorney Walker dated August 1, 2006, in which she indicated that Defendant "referred the additional medical information and all documents relevant to his claim, to our Behavioral Health Case Management Department for review . . . [and] [w]e will notify you upon completion of the review." (*Id.* at 58) On August 23 and 28, 2006, Defendant requested additional medical records from Dr. Avery.

On October 30, 2006, Defendant advised Plaintiff that the additional material from Dr. Avery was not sufficient to demonstrate Plaintiff was entitled to long term disability benefits, and therefore, more tests would be required. On November 30 and December 1, 2006, Robert Odgers, PhD., ABPP, conducted a neuropsychological evaluation of Plaintiff. Dr. Odger reported that Plaintiff's "neuropsychological profile does not suggest significant cognitive deficits that would affect his ability to work." (*Id.* at 156-66.)

On December 10, 2006, David A. Testone, Plaintiff's second attorney, wrote Defendant indicating that Defendant was in "violation of its fiduciary responsibility" because Defendant had "failed to make a decision" on Plaintiff's appeal within sixty days as is required by ERISA. (*Id*. at 230.) The letter also requested "immediate review" of Plaintiff's appeal. (*Id.*) Defendant responded to this letter on December 20, 2006, stating its final decision would be made once it

3

received the "assessment of the neuropsychological" exam.  The letter also indicated that Defendant did not believe it was in violation of ERISA.  The last communication before a final report was issued was a second letter dated December 20, 2006, sent by Defendant to Dr. Avery requesting that he comment on Dr. Odger's neuropsychological examination report.

On February 2, 2007, Defendant sent a letter to Plaintiff indicating that Plaintiff's claim was denied and that Defendant "made this decision based upon the policy provisions quoted in our letter of April 4, 2006 as well as review of the new/additional medical information." (*Id.* at 65-67.)  This letter also contained the same right to appeal language as the Denial Letter.  One week after receiving this denial letter, Attorney Testone telephoned Senior Examiner D Agostino "to discuss [Defendant's] denial of Plaintiff's claim."  D Agostino's notes state: "Recd incoming call yesterday, D. Testone, wanted to discuss ltr, denial reasons. Reviewed briefly, however, attny disagreed.  Advised at this time, they would be to formally appeal. . . .  Attny to appeal." (*Id.* at 120.)

On October 2, 2007, Plaintiff's third and current counsel, Gregory Mitchell, submitted additional information to Defendant related to a September 2007 report from a new doctor, Irineo Pantangeo, M.D.  On November 9, 2007, Defendant acknowledged receipt of this letter and information and classified it as an appeal.  Defendant refused to consider the appeal because it was submitted outside the 180-day timeframe allowed for by Defendant's appeal process.  On August 8, 2008, Plaintiff filed this action.

## II. Standard for Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "there is no genuine issue as to any material fact[.]"  Fed. R. Civ. P. 56(c).  In making this determination, the evidence must be viewed in the light most favorable to the

4

nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. The Court, however, may not make credibility determinations or weigh the evidence. *Anderson*, 477 U.S. at 255.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995) ("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial"). "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations." *Glover v. Speedway Super Am. LLC*, 284 F. Supp.2d 858, 862 (S.D. Ohio 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III. Analysis

Defendant moves for summary judgment on Plaintiff's claim for relief, arguing that Plaintiff failed to file a timely appeal of Defendant's denial of his claim for benefits, and

5

therefore, failed to exhaust his administrative remedies. Plaintiff, however, argues that he exhausted the administrative remedies available under the Plan as soon as Defendant failed to follow claims procedures consistent with the requirements of the ERISA regulations at 29 C.F.R. § 2560.503-1. This Court agrees.

20 C.F.R. § 2560.503-1 provides explicit guidance on the timing of notification of a benefit determination upon review. The Plan administrator is required to notify a claimant of the Plan's benefit determination within a reasonable period of time, but not later than 60 days after receipt of the claimant's request for review by the Plan, unless the administrator determines that special circumstances require an extension of time for processing the claim. If an extension of time is required, the Plan administrator is required to provide written notification of the extension prior to the termination of the 60-day period. "In no event shall such extension exceed a period of 60 days from the end of the initial period." 20 C.F.R. § 2560.503-1(h)(4)(i). The extension notice also needs to indicate the special circumstances requiring an extension of time, and the date the administrator expects to render a decision. *Id.* Further, the regulation provides that if the plan fails to establish or follow claims procedures consistent with the requirements of the regulation, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan." 20 C.F.R. § 2560.503-1(l).

Defendant argues that these regulations are inapplicable to the instant situation because Plaintiff's request for reconsideration falls outside the Plan's procedures and that the "regulation excludes any claims or requests that fall outside of a plan's procedures." (Doc. # 22 at 3) (relying on *Patel-Puri v. Metropolitan Life Ins. Co.*, No. C-05-0455, 2006 U.S. Dist. LEXIS 37099, at *17 (N.D. Cal. May 26, 2006) and *Horn v. Provident Life & Accident Ins. Co.*, 351 F. Supp.2d 954, 967 (N.D. Cal. 2004)). While it may be an accurate statement that 20 C.F.R. §

6

2560.503-1 excludes any claims or requests that fall outside of a plan's procedure, the Court concludes that Plaintiff's request for review of the benefits denial did not fall outside of the procedures of the Plan.

The Plan provided for Plaintiff to appeal a benefits determination. While Plaintiff referred to his appeal of the benefits denial as a request for "reconsideration," it nonetheless constituted an appeal under the Plan. The cases upon which Defendant relies clarifies this conclusion. That is, with regard to the *Horn* case, the court found that the insured's request for reconsideration was not an appeal and was instead an "informal inquiry" because although the request "expresse[d] plaintiff's dissatisfaction with the amount of his long-term disability benefits payments, it is in neither form nor substance an 'appeal' of plaintiff's benefits claims." *Horn*, 351 F. Supp. 2d at 966. The *Horn* court explained that "[u]nder the terms of the policy, an administrative appeal must be in writing and 'must set out reasons for the appeal and the Member's dissatisfaction or disagreement,'" which the plaintiff's informal inquiry failed to do. *Id.* Here, unlike the *Horn* plaintiff's informal inquiry, Plaintiff was informed that to appeal the benefits denial, the appeal must be in writing, must clearly state his position, must be signed and dated, and must be sent within 180 days. Plaintiff followed those instructions. Plaintiff made his appeal request in writing, signed and dated the letter, clearly stated his position for the appeal, and sent it within the appropriate time period. Simply because Plaintiff used the term "reconsideration" instead of "appeal" does not change the fact that Plaintiff's request was in form and in substance an appeal.

With regard to the *Patel-Puri* case upon which Defendant relies, that case too is distinguished from the facts before this Court. That is, the *Patel-Puri* court found a letter from the plaintiff-insured to the insurer constituted an informal request for reconsideration and not an

7

appeal, at least in part, because the plaintiff had already exhausted the one appeal that was allowed for by the disability insurance plan.  In the instant action, however, Plaintiff had not yet appealed the denial of benefits and received an administrative decision on that appeal.  Indeed, Plaintiff was attempting to appeal for the first time as was provided for in the Plan.

Accordingly, the Court concludes that Plaintiff's claim was deemed exhausted under 29 C.F.R. § 2560.503-1 when Defendant failed to timely respond to Plaintiff's July 14, 2006 appeal of Defendant's April 4, 2006 benefits determination.  *See Linder v. BYK-Chemie USA Inc.*, 313 F. Supp.2d 88, 94 (D. Conn. 2004) (concluded that the deemed exhausted "regulation is unequivocal that any failure to adhere to a proper claims procedure is sufficient to deem administrative remedies exhausted").

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion for summary judgment based upon Plaintiff's failure to exhaust his administrative remedies.  (Doc. # 16.)

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE